Harper, J.
There would be no question respecting this will in England. It would have given an estate for life to Elias Lynch Horry, the father, with remainder in. tail to his first and other sons, and in default of sons, to his daughters, successively, in the order of birth, leaving the reversion in the testator’s right heirs. On the birth of the son, the remainder in tail would have vested in him, and on his death, in 1797, would have vested in interest in the eldest daughter of Elias Lynch Horry, the elder, and on his death, in 1831, would have vested in possession, leaving the reversion still in the right heirs of the testator.
In like manner with us, there is no doubt but that Elias Lynch Horry, the father, took an estate for life, and that on the birth of the son, a fee conditional in the land vested in him. The first question is as to the validity of any remainder limited after the first devise of the fee conditional. In the case of Mazyck v. Vanderhorst, decided by this Court, it was determined that no remainder .could be limited after a fee conditional. The same thing was determined by me, as Chancellor, upon full consideration in the case of Bailey v. Seabrook, on the clear preponderance of the more modern authorities, notwithstanding the authorities of Bracton and Fleta, showing the existence of a different rule in their times. The same point was again determined by me, in the case of Chaplin v. Adams, 1 Hill’s Ch. R. 265, which determination was affirmed by this Court.
'*2471 *■*■* *s ^rue ^at case Bailey v. Seabrook, I threw out -* the suggestion, on the authority of the quotations from Bracton and Fleta, that before the statute de donis, there might have been a limitation of the fee conditional to several in succession, each taking the same qualified estate without having relation to the ultimate possibility of reverter; a sort of substitution not involving the power to limit the fee absolue; but, as said in that case, this is speculation too uncertain to found a conclusion upon. The passages referred to, import that the ultimate possibility or fee absolute may be limited. The whole current of English authorities is that no remainder can be limited after a grant of the fee simple conditional; and the reasoning of the cases illustrates this, because by the grant the first taker has the whole estate, so that there is nothing left in the grantor to be the subject of a further grant; and the further reason assigned in William and Berkley, Plowd. 235, 239, and other authorities, that before the statute, no formedon in remainder lay, so that such a remainder man would have been without remedy. This has certainly been the law of England since the time of Plowden — and should we be authorized to depart from it on our construction of the older authorities ?
All remainders, then, after the devise to the first son of Elias Lynch Horry were void; and on his death in 1797, his estate was determined *193 and the fee reverted to and vested in the right heirs of the testator, Elias Horry. Who were those right heirs ? At the death of the testator, before the passing of the Act of 1.791, abolishing the right of primogeniture, his son, Elias Lynch Horry, was his heir at law; but at the death of his son in 1797, the father, Elias Lynch Horry, together with his sister, the plaintiff, Mrs. Deas, according to the provisions of that act, answered the description of the testator’s heirs at law. The point was considered by me in Adams v. Chaplin, in which case also a fee conditional was devised by a testator who died before the Act of 1791, and the estate determined after the act. I refer to that case for the rule of the English law — “ That where a person entitled to an estate in remainder or reversion expectant on a freehold estate, dies during the continuance of the particular estate, the remainder or reversion does not descend to his heir, because he never had a seizin to render him the stock or root of an inheritance, but it will descend to the person who is heir to the first purchaser of such remainder or reversion, at the time when it comes into ^-possession” — and for the reasons which induced me — supposing r^o the rule to be different with respect to a remainder or reversion L under our statute of distributions, yet to conclude that with respect to a fee conditional, the estate must go to the person who can make himself heir to the grantor of the fee conditional, when that estate determines. It was argued that on the death of Elias Horry, the right of reverter descended on his son, Elias Lynch Horry, and it seemed to be thought that this right could not be divested by the act of legislature. But why not ? It belongs to the legislature to direct the course of descent, and declare who shall be heir. It is true that the right of reverter descended on Elias Lynch Horry in this sense, that if the fee conditional had determined at any time after the death of his father, and before the Act of 1791, he would have been the person then entitled to the benefit of it. But that right he could not have transmitted to his heir, if the Act of 1791 had never been passed. Such a right, according to the views before expressed, is not regarded as property, it is a mere possibility, analogous in some degree to an heir apparent’s right of succession.
Besides, as was justly observed in argument, if the act of the legislature is not to have effect, it must be on the ground that it is opposed to those provisions of the constitution, which are intended for the protection of private property. There is no other restraint than the constitution on the legislature. But the constitution itself provides that the right of primogeniture shall be• abolished, and in passing the Act of 1791, the legislature was only carrying the direction of the constitution into effect,
It was further argued that the right of reverter having descended on Elias Lynch Horry, the father, passed under the residuary clause of his will to his daughter. But this is a plain misconception. At the time of his death there was no possibility of reverter. The fee had long before vested in himself and his .sister, Mrs. Deas, and he could not divest her interest by his will. But I do not hesitate to express my opinion that such a possibility of reverter is not devisable. An authority relied on was the note to Kent’s Com. vol. 4, p. 498, n. d. “ Mr. Preston doubts whether a mere possibility of reverter be devisable, but there seems to be no reason for doubt since the decision in Jones v. Roe.” But with proper deference to that distinguished jurist, it does not appear to me
*194 that case Jones v. Roe R. 88) concludes this *matter. 4 J What is determined in that case is, that an executor devise is devisablq; that is, the interest which the devisee takes before the event on which it depends is determined. It is said that a possibility coupled with an interest is devisable. But I am persuaded that the right of reverter is not regarded as such a possibility. In the case of Goodright v. Forrester, 8 East, 552, subsequent to Jones v. Roe, it was determined that the right of entry could not be devised under the Stat. Wills, 21 H. 8, O. 1, which provides that persons “having manors, lands, tenements or hereditaments,” may dispose of them by will. It was argued on the terms of our statute of 1189, which authorizes any person having “right or title to any lands, tenements or hereditaments whatever,” to dispose of them, that the possibility of reverter is an hereditament, being descendible, and is therefore devisable. The possibility of reverter is descendible in the sense I have before 'pointed out; and exactly in the same sense the right of entry is descendible, and there seems to be no substantial difference in the words of the two statutes. But what is a right of entry ? The party has been divested of the estate by disseisin, but has the perfect present right of re-investing himself with the title by entry. Mr. Preston, in his elaborate argument of the case of Goodright v. Forrester, in the Exchequer Chamber, 1 Taunt. 603, (where it was finally determined on different grounds, without impugning the decision of the Court of King’s Bench on the point,) admits the authority of Jones v. Roe, but argues that, in point of law, though it is otherwise in point of fact, a right or title of entry is no interest; at least no interest for the purpose of disposition, though it is an interest which may be released, it is merely a naked possibility. But he who has the possibility of reverter, has no present interest, either in law or in fact, and the presumption is, that he will never have any, the whole estate, according to the cases, is in the' tenant in fee conditional. Is this less a naked possibility ? — The only decree which can be made at present is, that the decree of the Chancellor be reversed, and the demurrer overruled, and it is Ordered and decreed accordingly.
Johnson, J. and O’Neall, J. concurred.